■ In the Matter of WILLIAM OSGOOD et al., Petitioners, v

ARTHUR Y. WEBB, as Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities, Respondent.—Mikoll, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which revoked petitioners' certificate to operate a family care home.

This matter involves the revocation of petitioners' operating certificate issued by the office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD) authorizing them to care for up to three OMRDD clients in their residence. Petitioners were served with a notice of hearing and statement of issues which alleged that on August 23, 1987, petitioner William Osgood (hereinafter William) (1) provided a 19-year-old female resident client (hereinafter the client) with beer and asked her to consume such beer, (2) provided the client with a pornographic videotape and asked her to watch it, and (3) had oral, anal and vaginal intercourse with her. After a hearing conducted on various dates between December 3, 1987 and February 9, 1988, the Administrative Law Judge (hereinafter ALJ) issued an initial report on June 27, 1988 in which he sustained the charges lodged against William, stating, *inter alia,* that he found that overall the client's testimony was credible and that there was an opportunity for the beer drinking, video viewing and sexual activity which the client testified took place. The ALJ also found that the testimony of William was credible as to events that took place "up to approximately 11:00 p.m. on August 23, 1987, but not credible as to his denial of the remainder of [the client's] account". The ALJ found that a pair of blue underpants that contained semen stains were the "most damning evidence". However, the State Trooper who examined the underpants said the stains were very light and that semen stains could survive in clothing for many years, even withstanding laundering. The ALJ recommended that petitioners' operating certificate be revoked.

Subsequently, on July 14, 1988 petitioners moved to reopen the hearing based on the discovery of new evidence, i.e., taped conversations of petitioner Katrina Osgood (hereinafter Katrina) and the client recorded July 13, 1988. Katrina stated in an affidavit sworn to July 14, 1988 that the client recanted her earlier allegations of sexual activity with William and did not know why she made those allegations, that "it just came in my mind and I said it out of a clear blue". The affidavit also claimed that the client said that she had unpacked the

critical pair of blue underpants and put them in her drawer, that they were never worn at Katrina's house and that she used to wear them when she lived in Florida. The client also said that she had sex with her uncle in Florida. The recorded conversations of July 13, 1988 were preceded by a conversation of July 12, 1988 between Katrina and the client which was not recorded. An affidavit of Sandra De Chiaro, a word processor for the law firm representing petitioners, indicates that she made a transcript of the tape recordings between July 20, 1988 and the middle of August 1988; however, the transcripts were not before the ALJ on this motion. By written decision dated August 18, 1988, the ALJ found that the petition to reopen was not based on "new evidence" but rather an alleged denial of the version given during the hearings. He further commented that it was "given seven months later * * * at a time which raises serious questions as to its reliability" and that the "failure to produce a tape of the alleged conversation of July 12, 1988, fatally flaws the application to reopen".

The ALJ issued his final report on September 17, 1988. It was the same as his initial report except that it noted the denial of the motion to reopen and that the factual discussion portion had been amended to reflect that the underpants had not been "freshly laundered" between the depositing of semen and the State Trooper's examination.

Respondent issued a final determination and order on November 4, 1988 adopting the ALJ's report and recommendation as his own and directing that petitioners' operating certificate be revoked. The instant CPLR article 78 proceeding followed. Supreme Court dismissed that portion of the petition claiming that it was error to refuse to reopen the hearing and held that the ALJ did not act arbitrarily or capriciously or abuse his discretion. The remaining issues alleging that certain testimony concerning the client's polygraph test was erroneously admitted, that respondent erroneously applied the substantial evidence standard rather than the preponderance of the evidence standard, and that the determination was not supported by substantial evidence were transferred to this court for review.

The threshold issue presented is whether the ALJ's denial of petitioners' motion to reopen the hearing for the receipt of new evidence relating to the client's recantation was an abuse of discretion. In our view it was. The ALJ should have considered the new evidence since, to the extent it was credible, it could affect the disposition of the charges and/or the

penalty imposed, in whole or in part. Therefore, respondent's determination should be annulled and the matter remitted to respondent for receipt of the new evidence and for a new determination.

The refusal of the ALJ to reopen the hearing to receive new evidence that the client had recanted her testimony that she and William engaged in certain sexual acts on the night of August 23, 1987 was an abuse of discretion. 14 NYCRR 602.1 (p) states insofar as pertinent: "After the conclusion of a hearing, but prior to [respondent's] determination, a hearing may be reopened for the presentation of new evidence upon petition and in the discretion of the hearing officer." In *Matter of Boone v Ristich* (48 AD2d 833), a determination finding the petitioner, a therapy aide, guilty of two specifications of striking a resident patient was annulled. The petitioner was found guilty and dismissed from her employment on the basis of unsworn testimony of a resident patient who was the only eyewitness to the incidents. The petitioner sought to reopen the hearing on the basis of newly discovered evidence, which was that the eyewitness had recanted. The Second Department held that the petitioner should have been afforded the opportunity to introduce the recantation evidence and remitted the matter for the receipt of such evidence and the making of a new determination *(supra, at 834)*. In this case, a hearing is the proper vehicle to determine and weigh the credibility of such new evidence and to determine if the ALJ's prior decision was based on untruthful testimony *(see, Matter of Barrow v Loon Lake Hotel,* 3 AD2d 783).

The testimony of the client here was the only direct evidence of the sexual charges proffered against William. The acts allegedly took place in the residence when the other occupants of the home were asleep. The next day the client was examined for evidence of sexual activity. The doctor who examined her found no sperm, semen, foreign pubic hair, or evidence of redness or tearing anywhere on her body and could not determine whether she had been sexually abused. Blue underpants which the client said she was wearing before the sexual activity began and after, but not during, were found to contain semen stain. However, as noted, the State Trooper who examined them said that the stain was very light and that semen stains could survive in clothing even after laundering and for many years. The underpants had not been washed after sexual activity and before they were examined. There is no direct evidence except for the testimony of the client as to when or how the underpants became stained. The

client said that they were dirty from the mess—dirty from the sex. The State Trooper said that the underpants had a tear along the waistband, and that maybe the seam had been torn. This information is not inconsistent with the new evidence on the tapes.

Complicating the credibility of the client's testimony is the fact that she is a 19-year-old mildly mentally retarded individual who had been in OMRDD family care less than four weeks before petitioners were asked to take her in. She had already been removed from the first provider's home after she had fabricated a suicide threat incident. OMRDD records described the client as a liar with a history of making false statements. The caseworkers noted that she constantly talked of sexual matters and that she was preoccupied with sex. Her testimony was often changed or modified, and was conflicting and evasive.

Furthermore, complicating the ALJ's decision denying petitioners' motion to reopen the hearing to receive the new evidence regarding recantation is the fact that the ALJ received testimony indicating that the client had passed a polygraph test. Fred Finn, the Director of Oswald D. Heck Developmental Center, testified that, following his receipt of the test results, he decided to revoke petitioners' OMRDD certificate to operate a family care home. It is difficult to conclude that, despite the ALJ's determination not to consider the polygraph test results in assessing the credibility of the client, such knowledge did not in some way affect such assessment, especially considering the close credibility questions presented.

The fact that the ALJ did not characterize the taped conversations as new evidence but instead regarded it as recantation evidence was not sufficient justification for denying the application to reopen. The taped conversations did not occur until July 12, 1988 and July 13, 1988 and the motion to reopen was diligently made thereafter. The new evidence did not exist and was not available until uttered by the client and could not have been produced earlier. The case of *Matter of Boone v Ristich* (48 AD2d 833, *supra)* indicates that there is a duty to hear new evidence where the case depends on the credibility of a single witness. The requirements of fairness far outweigh the stated considerations for rejection of the alleged new evidence. Questions of credibility as to the veracity and weight to be given the new evidence should have been resolved in a new hearing under the circumstances of this case.

Criminal cases such as *People v Shilitano* (218 NY 161) and

*People v Donald* (107 AD2d 818) are not controlling in this situation as the standard of proof employed by the fact finder in criminal cases is beyond a reasonable doubt, where as here it is only that of substantial evidence (14 NYCRR 602.9 [g]). Certainly more is needed to overcome a verdict based upon the "beyond a reasonable doubt" standard. The reasoning applicable to those cases does not apply to administrative determinations.

In view of our disposition ordering a remittal and further proceedings, it is premature to discuss the other issues raised in this proceeding.

Determination annulled, with costs, and matter remitted to respondent for further proceedings not inconsistent with this court's decision. Kane, J. P., Casey, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.